[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
An action for strict foreclosure of a mortgage held by the plaintiffs at 3 Waverly Road, Branford, Connecticut, hereinafter the [Premises], against Donald W. Ifkovic, title owner of the premises, hereinafter [Ifkovic]. Although Ifkovic did not appear at trial, counsel of record for him at trial challenged the validity of the mortgage held by the plaintiffs, hereinafter the [Cottieros]. The other named defendant, Chemical Bank, hereinafter the [Bank] challenges the mortgage validity on the grounds that it was given for an antecedent debt and not based on sufficient consideration. Ifkovic by special defense asserts that although his warranty deed to the premises was recorded after the Cottiero mortgage it was recorded within a reasonable time after its delivery and therefore has priority over the mortgage being foreclosed. Both defendants seek priority over the Cottiero mortgage. As Ifkovic stated the "convoluted factual background of this case could well serve as a model of how not to practice conveyancing and mortgage law."
The Cottieros and H. Parker Sund, hereinafter [Sund] formed a partnership for the operation of a restaurant business in 1986 which lasted until the fall of 1988. They never made any profits in the business leading them to close the Restaurant, Harlow's, and ultimately sell the property in which it was located.
The parties at trial in addition to the testimony offered entered into a stipulation of facts: [Stipulation of Facts, Plaintiffs' Post Trial Memorandum]
 1. In 1986, the Cottieros and Sund formed a partnership named Sundcott for the purposes of purchasing property to start a restaurant in Branford, Connecticut, named Harlow's.
 2. After being open eighteen months, Harlow's failed in early 1988.
 3. At the time Harlow's closed, the Cottieros and Sund had accrued trade debts of approximately $190,000.00. CT Page 8686
 4. The Cottieros and Sund wanted to sell the Harlow's property to cut their losses. To do so, they had to pay the $190,000.00 debt.
 5. They agreed that they would split the debt in half, with Sund taking one half and the Cottieros taking the other half.
 6. The Cottieros were able to pay part of their half of the debt through the sale of another property they owned in West Haven, Connecticut. To cover the remainder of their debt, they applied for a mortgage with The State Street Mortgage Company ("State Street Mortgage").
 7. Sund did not have sufficient credit or cash to cover his share of the debt, so the Cottieros agreed to lend Sund approximately $95,000.00.
 8. On April 12, 1989, the Cottieros lent Mr. Sund the $95,000.00 as part of the sale of Harlow's.
 9. To cover the amount both the Cottieros and Sund owed, the Cottieros obtained a loan from State Street Mortgage for the amount remaining on the Cottieros' debt, plus the $95,000 Sund owed, for a total of $135,000.
 10. The Cottieros executed a note and mortgage secured by their home at 31 Knollwood Road, Branford, Connecticut, on April 11, 1989.
 11. Sund agreed to sign a note evidencing his obligation to the Cottieros. The note would be secured by a mortgage.
 12. In early May 1989, the Cottieros and Sund asked Attorney David Spinner of Bergman, Horowitz Reynolds, P.C., to prepare a note to be made by Sund and a mortgage from Sund to the Cottieros.
 13. Mr. Spinner prepared the documents and sent them along to the Cottieros and Sund.
 14. The Cottieros and Sund executed a letter dated May 17, 1989, stating that the purpose of the note and mortgage was "to equal out the respective contributions of all the parties with respect to the case required to effectuate the sale of CT Page 8687 Harlow's Restaurant."
 15. By letter dated May 19, 1989, Attorney Spinner forwarded a revised mortgage deed to the Cottieros, with a copy to Sund, which covered the two parcels of property, 34 Pawson Trail and 3 Waverly Road.
 16. On May 24, 1989, Mr. Sund made an interest payment on the $95,375 obligation to Cottieros.
 17. On June 14, 1989, Mrs. Cottiero and Sund met at the offices of Attorney Richard Kahl in Branford.
 18. Mrs. Cottiero gave the signed note and mortgage to Mr. Cottiero on June 14, 1989, and he had the documents recorded as one package on the Branford Land Records on June 15, 1989, a Thursday. The documents are recorded at Vol. 471 pages 932-937 of the Branford Land Records.
 19. On June 12, 1989, a Monday, Sund and Ifkovic met with Attorney Hugh Manke to execute a warranty deed, and a note and mortgage deed for 3 Waverly Road.
20. Ifkovic paid $235,000.00 for the property.
 21. Ifkovic financed his purchase with a mortgage from Chemical Bank for $184,000.00.
 22. The deed from Sund to Ifkovic and the Chemical Bank mortgage were recorded June 20, 1989, a Tuesday. The Chemical Bank mortgage is recorded at Volume 472 at Page 147 of the Branford Land Records.
 24. Sund made interest payments to the Cottieros until February 1990, at which point the payments stopped.
25. Sund filed for bankruptcy protection on May 10, 1990.
 26. At the time of the execution, delivery and recordation of the Note and Mortgage which is the subject of the above referenced foreclosure action, the property which is the subject of the above-referenced foreclosure action was subject to:
a. A Mortgage in the amount of $109,500.00 from H. CT Page 8688 Parker Sund to Branford Savings Bank dated November 26, 1986 and recorded in the Land Records of the Town of Branford, Connecticut, in Volume 412 at Pages 386 through 391; and
 b. An Attachment in the amount of $60,000.00 from Leonard P. Cottiero, Jacqueline A. Cottiero and H. Parker Sund, partners, D/B/A Sundcott to Branford Savings Bank dated June 30, 1988 and recorded in the Land Records of the Town of Branford, Connecticut, in Volume 453 at Page 808.
 27. H. Parker Sund a/k/a Harry P. Sund executed a warranty deed covering his interest in and to the property which is the subject of the above-referenced foreclosure action. The grantee was Defendant Donald W. Ifkovic, Jr. The deed was duly signed, witnessed and acknowledged on June 12, 1989 and was recorded on the Land Records of the Town of Branford, Connecticut, on June 20, 1989 in Volume 472 at Pages 145 and 146.
 28. On June 12, 1989, funds were withheld from the proceeds of the sale, based on the settlement statement, and thereafter paid to Branford Savings Bank in satisfaction of and in exchange for releases of the encumbrances set forth in paragraphs 26a and 26b above as follows:
 a. $111,352.15 was paid to Branford Savings Bank in satisfaction of the mortgage referenced in paragraph 26a above;
 b. $40,930.00 was paid to Branford Savings Bank in satisfaction of the attachment referenced in paragraph 26b above.
 29. $81,481.45 was paid to H. Parker Sund, according to the settlement statement.
 30. A release of the mortgage referenced in paragraph 26a above was recorded on June 20, 1989 in the Branford Land Records in Volume 472 at Page 143. A release of the attachment referenced in paragraph 26b above was recorded on June 20, 1989 in the Branford Land Records in Volume 472 at Page 144. CT Page 8689
At trial David M. Spinner's affidavit dated March 10, 1993 was introduced by the defendant Bank, attached hereto and made a part hereof as appears in an Addendum to this memorandum. [Bank's Exhibit 2].
Included in the Spinner affidavit is a letter dated May 19, 1989 to Sund enclosing the Mortgage Deed revised to include two parcels of property and a request that Sund sign Spinner's conflict letter dated May 17, 1989 also attached to the Spinner affidavit [Bank's Exhibit 2]. The second piece of property to secure Sund's indebtedness was 3 Waverly Road, the subject premises of this foreclosure. Sund had entered into a Sales Agreement to sell the premises to Ifkovic on April 1, 1989 [Defendant Ifkovic Exhibit 3]. Sund and Cottieros had negotiations with Spinner at least through May 19, 1989 without Sund disclosing to Spinner that the mortgage contemplated by the parties was already negotiated to be sold.
Sund at trial testified he related to Cottieros that he was contemplating selling 3 Waverly Road. The Cottieros deny any such disclosure to them.
Sund, who has held many high employment positions with reputable businesses appeared to be astute yet not to be believed. He testified he deliberately withheld signing the Cottieros mortgage deed drawn by Spinner and did so only after his closing with Ifkovic. The good funds paid to Sund were $235,000.00 of which the Bank advanced $184,000.
Attorney Spinner testifies it is not unreasonable to take two months to complete the paper work or to add security intended from one to another.
No explanation is given for Sund's signing the mortgage of Waverly Road to Cottieros after he had already sold the property. Sund was aware of the transaction to Ifkovic and mortgage to the Bank as of June 12, 1989. This court believes the testimony of the Cottieros that Sund did not tell them he was selling Waverly Road or that he had sold it when he signed the mortgage of Cottieros subject of this foreclosure action.
The defendants challenge the validity of the Plaintiffs mortgage on the grounds that it secures an antecedent debt. The defendant Ifkovic further asserts that to allow the plaintiffs to the foreclosure and priority it would afford the plaintiffs a windfall or result in unjust enrichment at the expense of Ifkovic CT Page 8690 and the Bank.
The mortgage owned by the Cottieros executed and recorded on June 14, 1989 was not securing an antecedent debt. There was good and valuable consideration for the security the Cottieros received. Sund and they had negotiated in good faith the amounts due to Cottieros.
The mortgage to 3 Waverly Road finalized the transaction between the Cottieros and Sund. The security given was not for previous loans, it was one transaction that took two months to finalize that under the present circumstances of the facts in this case was not unreasonable. The only thing that becomes unreasonable in this case is that the mortgage of the Bank was not recorded in accordance with recognized standards of practice. Unexplained delays of recording mortgages or documents is inexcusable according to the expert regional counsel for First American Title Company who testified in this case. At the latest the recording of the Bank mortgage should have been the following day June 13, 1989 not June 20, 1989. In Farmers and Mechanics Savings Bank v. Vincent A. Garofalo III et al, 219 Conn. 810, the Court held that the mortgagee who seeks to have its mortgage prior to a third party has the burden of proof to show that its mortgage was recorded pursuant to 47-10 of the Connecticut General Statutes within a reasonable time so as to affect other lien holders. "`[T]he length of time that is considered reasonable, has never been ascertained, and perhaps cannot be, and must be left according to the special circumstances of each case.'" Farmers and Mechanics, supra, p. 821. This court finds that the recording of the mortgage in this case was not reasonable.
The argument of the Bank as to the lack of valid consideration in this case is without merit. Both Cottieros and Sund were indebted as a result of Harlow's Restaurant losses. Cottieros satisfied Sund's obligation for which he received a valid note secured by security for which he bargained although somewhat delayed.
Although Sund asserts he informed the Cottieros of his sale of the property he told no other person such as Spinner, the scrivener of the mortgage deed in issue and continued the charade by executing the mortgage given to Cottieros. Ifkovic argues that the Cottieros the plaintiffs were not prudent lenders of $95,000 without documenting the loan. The two months delay to get Sund to sign the mortgage is easily understandable knowing that Sund was CT Page 8691 deliberately concealing his sale of the premises. Nothing appeared on record for the sale to Ifkovic, Cottieros had no notice of any such sale. The Cottieros received their mortgage as bona fide purchasers for value and recorded their instrument in accordance with 47-10. It would be unfair and unjust to rearrange the priorities in this case to give the Bank a later recorded mortgage a superior right of enforcement because of the unexplained and unreasonably recording of its mortgage.
Ifkovic in his brief claims that Cottieros will be unjustly enriched because the Waverly Road property had a $40,930 lien of Branford Savings Bank satisfied. No set offs were pleaded to the foreclosure of the Cottieros mortgage by either defendant nor did the evidence establish whether said sums were or were not included at the time the debt was fixed between Sund and the Cottieros.
The argument of the defendant Ifkovic as to the amount of the debt owed Cottieros has no evidential foundation in this case.
While it is the law of this state that priority among competing interests in a foreclosure action is not dependent solely on the chronology of recording, Connecticut National Bank v. Chapman, 153 Conn. 393 (1966); and that the court has broad equitable powers to ensure complete justice, Connecticut Bank and Trust Co. v. Winters, 26 Conn. App. 317 (1991), the plaintiffs in this case have a valid mortgage which is in default prior in right over the defendant's interests.
The parties by stipulation agreed that at the date of trial the value of the premises, 3 Waverly Road, Branford, Connecticut is $135,000.00 and the court so finds.
The affidavit of debt filed by the plaintiffs shows a total sum of $175,744.05 as of August 20, 1993.
No opposition has been made to the counsel fees nor was an evidentiary hearing requested [See Exhibit G].
Accordingly judgment is entered in favor of the plaintiffs and the following orders are entered:
 1. Strict foreclosure of the premises 3 Waverly Road, Branford, Connecticut
2. The debt is found to be $175,744.05 CT Page 8692
3. Counsel fees $41,220.79
 4. The first law day for the title owner Ifkovic is set 30 days from the date of this decision.
 5. Remaining encumbrances in inverse order of their priorities pursuant to this decision shall be set in successive days set forth in the judgment file prepared by plaintiffs counsel.
Frank S. Meadow State Trial Referee
ADDENDUM
AFFIDAVIT OF DAVID M. SPINNER
The undersigned, David M. Spinner, does hereby depose and state as follows:
1. I am over the age of eighteen years and believe in and understand the obligations of an oath.
2. I am an attorney at the law firm of Bergman, Horowitz Reynolds, P.C., 157 Church Street, New Haven, Connecticut. I have been with this firm since
3. In May 1989, H. Parker Sund ("Mr. Sund") and Jacqueline and Leonard Cottiero ("Mr. and Mrs. Cottiero") requested me to prepare a note and mortgage for Mr. Sund in favor of Mr. and Mrs. Cottiero.
4. The note and mortgage were part of one single transaction to equal out the respective contributions of all the parties with respect to the cash required to effectuate the sale of Harlow's Restaurant, a business owned by both parties as partners. A copy of the agreement dated May 17, 1989 prepared by me for Mr. and Mrs. Cottiero and Mr. Sund, and signed by me, indicating the extent of my involvement in this transaction and the purpose of the transaction, is attached hereto as Ex. A.
5. The mortgage to secure the note originally was drafted to give the Cottieros an interest in Mr. Sund's CT Page 8693 property at 34 Pawson Trail, Branford, Connecticut. The parties subsequently agreed, however, and notified me, that the note was supposed to be secured by a mortgage for Mr. Sund's properties at both 34 Pawson Trail, Branford, Connecticut and 3 Waverly Road, Branford, Connecticut. The mortgage was thereafter redrafted to reflect this agreement, and to secure both properties. A true and accurate copy of a letter from my office, my request in the regular course of business by my paralegal, Beverly J. Mariano, dated May 19, 1989, which states that the mortgage was revised to include two pieces of property, is attached hereto as Ex. B.
6. I have read the statements listed above and hereby verify that the facts alleged therein are accurate to the best of my knowledge, information and belief.
David M. Spinner
Sworn and subscribed to before me this 10th day of March, 1993.
Commissioner of the Superior Court
EXHIBIT A
 BERGMAN, HOROWITZ REYNOLDS, P.C. ATTORNEYS AT LAW
May 17, 1989
Mr. H. Parker Sund 34 Pawson Trail Branford, Connecticut 06405
Mr. and Mrs. Leonard Cottiero 31 Knollwood Road Branford, Connecticut 06405
 RE: Note and mortgage from Parker Sund to Leonard and Jacqueline Cottiero
Dear Parker, Lenny and Jackie:
As you know, you have all indicated to me at various times that, in order to equal out the respective contributions of all the parties CT Page 8694 with respect to the cash required to effectuate the sale of Harlow's Restaurant, that you requested me to draw a note and a mortgage from Parker in favor of Leonard and Jackie.
Before doing so and executing these documents, I wish to take this opportunity to say again what I have indicated before: Obviously, my role in these various transactions has been to represent the interests of Harlow's, and to the extent they were coincident, your individual interests as well. With regard to this particular transaction in which one of you is .giving a note and mortgage to the other one, I have a clear conflict with regard to any representation either of you with respect to the other. You have all indicated to me that you have requested me to proceed notwithstanding the foregoing, and that all of the terms and provisions of this transaction are agreed to without objection between the parties.
Under these circumstances, I have not given, and will not give, legal advice to any of you with regard to this transaction, since would involve a conflict situation. I urge you to seek your own legal counsel with respect to this matter. I point out to you that, with respect to this particular transaction, I am acting as a mere scrivener, and not as legal counsel to any of you.
Notwithstanding the foregoing, you have specifically requested that I proceed to act as scrivener in this matter, and you have agreed that you have waived any conflict which I or this office may have with respect to this transaction.
Won't you each sign on the line provided below indicating that you have read this letter, and agree to all of the statements made herein.
Thank you.
Very truly yours, David M. Spinner
H. PARKER SUND
LEONARD COTTIERO
JACQUELINE COTTIERO
EXHIBIT B CT Page 8695
 BERGMAN, HOROWITZ REYNOLDS, P.C. ATTORNEYS AT LAW
May 19, 1989
Mr. and Mrs. Leonard Cottiero 31 Knollwood Road Branford, CT 06405
RE: MORTGAGE TO H. PARKER SUND
Dear Mr. and Mrs. Cottiero:
At the request of Attorney Spinner, I am enclosing the Mortgage Deed from Mr. Sund for your review, which has been revised to include two parcels of property. Please let me know how you wish to have this executed.
Additionally, David has requested that you return to his attention, the signed letter with regard to "conflict of interest".
Should you have any questions with regard to the above, please do not hesitate to contact me.
Very truly yours,
Beverly J. Mariano Paralegal
CC: Mr. H. Parker Sund